UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| NORMAN OETH JR; | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 1407 |
| | ) | |
| vs. | ) | Judge Mihm |
| | ) | |
| KNOX COUNTY; et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS MICHAEL INGLES AND CITY OF GALESBURG'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Norman Oeth Jr, through counsel Jackowiak Law Offices, responds to Defendants' Motion for Summary Judgment as follows:

**I.      Introduction**

This is a § 1983 excessive force case arising from an incident that occurred at the Knox County Jail on March 9, 2009. In his deposition, Plaintiff testified that the Defendant-Officers slammed him into a bench and wrenched his arm behind his back so forcefully that they snapped the bone, causing severe injuries that required surgery. Plaintiff had not resisted the Defendant-Officers' attempts to handcuff him in any way.

Meanwhile, Defendants have a completely different version of events. According to them, their use of force was reasonable and necessary because Plaintiff was violently resisting their attempts to handcuff him. Defendant Ingles never charged Plaintiff with resisting and the false charge of resisting brought by the Knox County Defendants was dismissed.

Now, Defendant-Officer Ingles and City of Galesburg have filed a motion for summary judgment. Their motion relies entirely on their own version of the disputed material facts. The motion is meritless and should be soundly denied.[1]

**II.     Response to Defendants' Statement of Material Facts**

1.      Plaintiff, Norman Oeth was arrested on March 5, 2009, for DUI by Defendant

---

[1] Notably, the Knox County Defendants have already settled with the Plaintiff.

Galesburg Police Officer, Michael Ingles. (Ex. 1, Plaintiff's Complaint, Par. 13)

**RESPONSE**: Not disputed.

2. Plaintiff became angry when a Galesburg Officer searched his car. (Ex. 2, Plaintiff's Deposition, pages 8 and 15).

**RESPONSE**: Not disputed.

3. Plaintiff was initially transported to the Galesburg Police Department for processing of his DUI tickets by Officer Ingles. (Ex. 2, Plaintiff's Deposition, page 18-19)

**RESPONSE**: Not disputed.

4. During the booking process, Plaintiff was not cooperative with the officers, including tearing up his ticket and paperwork and throwing it on the floor, hanging up the phone multiple times while the officer was trying to use the phone, threatening to fight and head butt the officers multiple times, and would not allow Officer Ingles to handcuff him after his processing was finished. (Ex.3, Galesburg DVD, minutes 0:51.39, 0:53.20, 0:55.50, 0:59.22, 0:59.50, 1:03.22, 1:05.27, 1:06.30, 1:07.23, 1:15.49, 1:22.45, 1:27.45, 1:35.48, 1:36.03, 1:38.01)

**RESPONSE: Disputed. Plaintiff stated that he was playing around with Defendant Ingles as he has known Ingles for a long time. (Plaintiff's Exhibit 1, p. 21, lines 6-13.) Additionally, Plaintiff complied with being handcuffed. (Plaintiff's Exhibit 1, p. 21, lines 17-22.)**

5. Despite Plaintiff's conduct, Officer Ingles was calm and professional while processing Plaintiff's DUI tickets (Ex. 3, Galesburg DVD-entire DVD)

**RESPONSE: Disputed as to meaning of "calm and professional." Plaintiff does dispute the Knox County Jail when he broke Plaintiff's arm. (See Plaintiff's statement of additional facts ¶ 22-25.)**

6. When Officer Ingles attempted to handcuff Plaintiff to transport him to the Knox County Jail, Plaintiff required two officers to handcuff him. (Ex. 3, Galesburg DVD, minutes 1:38.00)

**RESPONSE: Disputed as to meaning of "required two officers." Plaintiff was handcuffed without the use of force. (See Defendants' Exhibit 3.)**

7. After booking at the Galesburg Police Department, Plaintiff was transported to the Knox County Jail by Defendant Ingles. (Ex. 1, Plaintiff's Complaint, Par. 14)

**RESPONSE**: Not disputed.

2

8.    Upon arrival at the Knox County Jail, Officer Ingles turned Plaintiff over to the Knox County deputies. (Ex. 2, Plaintiff's Deposition, Page 24)

**RESPONSE**: **Not disputed.**

9.    Once inside the Knox County Jail, the Knox County deputies began the process of receiving Plaintiff into the jail. (Ex. 4, Deposition of Jason Morton, page 39)

**RESPONSE**: **Not disputed.**

10.   Plaintiff was placed in a holding cell by Knox County deputies. (Ex. 1, Plaintiff's Complaint, par. 15; Ex. 2, Plaintiff's deposition, page 24)

**RESPONSE**: **Disputed. Defendant Ingles placed Plaintiff into the holding cell. (Plaintiff's Exhibit 3, p. 52, lines 13-15.)**

11.   During the process of receiving the prisoner, Officer Ingles sat down at an administrative desk outside the holding cell to process his paperwork. (Ex. 3a, Knox County Booking video; Ex. 5, Deposition of Michael Ingles, page 57; Ex. 4, Deposition of Jason Morton, page 39)

**RESPONSE**: **Not disputed.**

12.   Three Knox County deputies were attempting to handcuff Plaintiff in the holding cell at the Knox County Jail. (Ex. 2, Deposition of Plaintiff, page 34; Ex. 5, Deposition of Michael Ingles, page 58; Ex. 6, Deposition of Brad Abernathy, page 46-48; Ex. 4, Deposition of Jason Morton, page 56; Ex. 7, Deposition of Jeffrey Joe Higgins, page 21-22)

**RESPONSE**: **Disputed. Plaintiff stated Defendants Morton twisted his arm and slammed him to the ground. (Plaintiff's Exhibit 1, p. 28, lines 14-20.)**

13.   Plaintiff was 6"2' tall and weighs 250-280 pounds (Ex. 5, Deposition of Michael Ingles, page 53)

**RESPONSE**: **Not disputed.**

14.   The Knox County deputies called for backup from Officer Ingles in order for him to bring handcuffs and leg shackles into the holding cell. (Ex. 2, Deposition of Plaintiff, page 35; Ex. 5, Deposition of Michael Ingles, page 63; Ex. 4, Deposition of Jason Morton, page 56; Ex. 6, Deposition of Brad Abernathy, page 47; Ex. 7, Deposition of Jeffrey Joe Higgins, page 24-25)

**RESPONSE**: **Disputed. Defendant-Officers did not need back as plaintiff was not resisting. (Plaintiff's Exhibit 1, p. 36, lines 5-9.).**

15. When Officer Ingles entered the cell, Plaintiff was laying face down on a concrete bench inside the holding cell with three officers attempting to restrain him. (Ex. 2, Deposition of Plaintiff, page 34; Ex. 5, Deposition of Michael Ingles, page 61-63, 66; Ex. 4, Deposition of Jason Morton, page 56, 63-64; Ex. 6, Deposition of Brad Abernathy, page 47-48; Ex. 7, Deposition of Jeffrey Joe Higgins, pages 21-24)

**RESPONSE: Disputed as to meaning of "attempting to restrain." Plaintiff states that he was not resisting the officers and complying with their orders (See Plaintiff's statement of additional facts)**

16. Officer Ingles heard the deputies command Plaintiff to stop resisting and to be handcuffed. (Ex. 5, Officer Ingles Deposition, pages 57-58, 62)

**RESPONSE: Disputed. Defendant-Officers did not tell Plaintiff to stop resisting. Plaintiff was not resisting. (Plaintiff's Exhibit 1, p. 36, lines 5-9.)**

17. Plaintiff admits that he was given the command to be handcuffed (Ex. 2, Plaintiff's Deposition, pages 34-36)

**RESPONSE: Not disputed. Answering further, Plaintiff was complying with the officer's command to be handcuffed but was unable to give the officer his left arm as it was pinned underneath him after the Defendants tackled him. (Plaintiff's Exhibit 1, p. 35, line 8-13)**

18. Officer Ingles attempted to gain control and put handcuffs on Plaintiff's right arm. (Ex. 5, Deposition of Michael Ingles, page 68-69; Ex. 4, Deposition of Jason Morton, page 66, 68-70; Ex. 6, Deposition of Brad Abernathy, page 51-52; Ex. 7, Deposition of Jeffrey Joe Higgins, page 26-28)

**RESPONSE: Disputed. Plaintiff's right arm was held by officer Ingles. Plaintiff was not resisting. (Plaintiff's Exhibit 1, p. 35, lines 19-23.)**

19. Plaintiff failed to relinquish his right arm to Officer Ingles after he was commanded to be handcuffed. (Ex. 5., Deposition of Michael Ingles, page 62, 65-69; Ex. 4, Deposition of Jason Morton, page 68-69; Ex. 6, Deposition of Brad Abernathy, page 42, 48-49, 51-54; Ex. 7, Deposition of Jeffrey Joe Higgins, page 26-28)

**RESPONSE: Disputed. Plaintiff stated his right arm was still being held by officer Ingles. (Plaintiff's Exhibit 1, p. 35, lines 19-23.)**

20. As Officer Ingles was trying to place Plaintiff's hand behind his back to handcuff

4

him, Plaintiff's arm was broken. (Ex. 1, Plaintiff's Complaint, Par. 31, 34; Ex. 5, Deposition of Michael Ingles, page 68-69; Ex. 4, Deposition of Jason Morton, page 68-72; Ex. 6, Deposition of Brad Abernathy, page 51-56; Ex. 7, Deposition of Jeffrey Joe Higgins, page 26-29)

**RESPONSE: Disputed. Defendant Ingles already had Plaintiff's right hand behind his back. (Plaintiff's Exhibit 1, p. 35, line 19-23.)**

21.   Officer Ingles then left the room to call for medical assistance. (Ex. 2, Deposition of Plaintiff, page 42-43; Ex. 5, Deposition of Michael Ingles, page 71; Ex. 4, Deposition of Jason Morton, page 72; Ex. 6, Deposition of Brad Abernathy, page 57)

**RESPONSE: Not disputed.**

### III.   Plaintiff's Statement of Additional Material Facts

1.   After Plaintiff was booked at the Galesburg police station, the officers ordered Plaintiff to be handcuffed. (Plaintiff's Exhibit 1, Dep of Plaintiff, p. 21, lines 14-16.)

2.   Plaintiff submitted to being handcuffed. (Plaintiff's Exhibit 1 at p. 21, lines 17-19.)

3.   At the Knox County Jail, Plaintiff was ordered out of the police car. (Plaitniff's Exhibit 1 at p. 23, lines 16-18.)

4.   Plaintiff did not disobey the order, but due to his size had difficulty getting out of the police car. (Plaintiff's Exhibit 1 at p. 23, lines 19-11.)

5.   At the Knox County Jail, Plaintiff encountered Defendants Jason Morton and Brad Abernathy (Plaintiff's Exhibit 1 at p. 25, line 7-13.)

6.   Plaintiff has had disagreements with both Defendants in the past. (Plaintiff's Exhibit 1 at p. 25, lines 17-20, p. 132, lines 22-8.)

7.   Plaintiff was placed into a holding cell at the jail. (Plaintiff's Exhibit 1 at p. 27, lines 18-5.)

8.   While in the holding cell, Defendant Morton did a pat down of Plaintiff and started kicking his legs. (Plaintiff's Exhibit 1 at p. 28, lines 13-15.)

9.   Morton pulled and tugged on the handcuffs that were on Plaintiff. (Plaintiff's Exhibit 1 at p. 28, lines 16-17.)

10.   Plaintiff got into a verbal argument with Morton. (Plaintiff's Exhibit 1 at p. 29,

lines 10-13.)

11. Plaintiff went onto his toes to relive the pressure from Morton pulling on his arm. (Plaintiff's Exhibit 1 at p. 31, lines 16-19.)

12. During the argument with Morton, Plaintiff never moved his arms in any way to resist. (Plaintiff's Exhibit 1 at p. 29, lines 17-19.)

13. Plaintiff complied with all of the orders given by the Defendants. (Plaintiff's Exhibit 1 at p. 32, lines 10-23, p. 38, lines 19-22; Plaintiff's Exhibit 2, Dep of Defendant Morton, p. 47, lines 5-23.)

14. Plaintiff never pushed against the wall or against officer Morton. (Plaintiff's Exhibit 1, at p. 33, lines 1-3.)

15. Once Plaintiff got onto his toes, Defendants Abernathy and Morton slammed Plaintiff into a bench in the cell. (Plaintiff's Exhibit 1, p. 34, lines 16-18.)

16. Plaintiff was slammed onto his stomach. (Plaintiff's Exhibit 1, p. 34, line 19-20.)

17. Plaintiff's left arm was trapped under his body and he could not get it out because of the pressure applied by the Defendants. (Plaintiff's Exhibit 1, p. 35, lines 6-13.)

18. Defendants Ingles was in the holding cell at this time. (Plaintiff's Exhibit 1, pp. 34-35, lines 21-2.)

19. While Plaintiff was lying on his stomach, Plaintiff told the Defendants that he couldn't breathe and could not get his arm because it was pinned underneath him. (Plaintiff's Exhibit 1, p. 36, lines 5-15.)

20. Plaintiff did not resist the Defendants. (Plaintiff's Exhibit 1, p. 36, lines 5-7.)

21. Plaintiff never clenched his right fist and put it under his body. (Plaintiff's Exhibit 1, p. 37, lines 3-5.)

22. Plaintiff was being cooperative with the officers. (Plaintiff's Exhibit 1, p. 38, lines 6-8.)

23. Defendants Ingles had Plaintiff's right arm in a "goose neck." (Plaintiff's Exhibit 3, Dep of Ingles, p. 69, lines 9-22.)

24. Plaintiff told the Defendants that his arm hurt. (Plaintiff's Exhibit 2, p. 72, lines 15-20.)

25. Ingles then lifted Plaintiff's arm closer to his head until it broke. (Plaintiff's Exhibit 1, p. 39, lines 11-14.)

26. The video from the Knox County Jail is missing five minutes of footage during the incident with Plaintiff. (Plaintiff's Exhibit 3, p. 64, lines 1-23.)

27. Defendant Ingles was aware that the video at the Galesburg Police Department records audio and video. (Plaintiff's Exhibit 3, p. 91, lines 4-18.)

28. Defendant Ingles did not know if the Knox County Jail had audio or video recording. (Plaintiff's Exhibit 3, p. 91, lines 19-21.)

29. The criminal charges against Plaintiff for misdemeanor resisting arrest stemming from the incident in the holding cell were dismissed. (Plaintiff's Exhibit 1, p. 48, lines 15-17; Plaintiff's Exhibit 2, pp. 80-81, lines 20-9.)

30. Defendant Ingles name does not appear on the Information against Plaintiff for the charge of resisting. (Plaintiff's Exhibit 4, Circuit Court of The Ninth Judicial Circuit Knox County Information against Plaintiff.)

## IV. Argument

### A. Plaintiff Has Put Forth Sufficient Evidence From Which a Reasonable Jury Could Find Defendant Ingles Used Excessive Force

Plaintiff has presented ample evidence from which a reasonable jury could find that Defendant Ingles' use of force was excessive.

Plaintiff will testify that at the Knox County Jail he was placed in a holding cell where he was searched by Defendant-Officer Jason Morton. Morton was unnecessarily rough with Plaintiff and kicked Plaintiff's legs during the search. When Plaintiff protested, Defendants Abernathy and Morton slammed Plaintiff down on his stomach on a bench, trapping Plaintiff's arm beneath his body. Defendant Ingles then put Plaintiff's right arm in a "gooseneck" and wrenched his arm towards his head. Plaintiff told Ingles that he was injuring him. Plaintiff did not resist the officers' attempts to handcuff him in any way. Defendant Ingles continued to forcefully push Plaintiff's arm towards his upper back until it popped, breaking Plaintiff's bone. Meanwhile, the other Defendant-Officers held Plaintiff down.

The evidence will show that Ingles did not think that he would not be captured on video while he was in the Knox County Jail with Plaintiff. Ingles knew, however, his actions were recorded at the Galesburg police department where he processed Plaintiff. In addition, the video tape from the Knox County Jail on the date of the incident is missing five minutes of footage from the time that Ingles broke Plaintiff's bone. Ingles used to work at the Knox County Jail and

knew Defendant Morton. That fact alone could allow a reasonable jury to make an adverse inference that the Defendants attempted to cover-up the excessive force they used on Plaintiff by editing the video recording. Plaintiff expects the evidence to show that Defendant Ingles' actions were a deliberate attempt to injure and harm Plaintiff in retribution for Plaintiff's disrespectful conduct during his arrest and booking at the Galesburg police station. If proven at trial, these facts would entitle Plaintiff to judgment on his excessive force claim.

Nonetheless, Defendants argue that they should be granted summary judgment because they think that their version of events is more credible. According to them, "if Plaintiff was not resisting, Officer Ingles could have easily completed the task of handcuffing Plaintiff without breaking Plaintiff's arm" and "a reasonable jury could not reach the conclusion that Plaintiff was following commands when it took four officers to physically restrain him." Defendants are free to make those arguments to the jury at trial, but that does not mean they are entitled to summary judgment. At the summary judgment stage, the Court must credit Plaintiff's version of the disputed facts.

The Seventh Circuit has recognized that summary judgment is inappropriate in excessive force cases when the evidence surrounding the officer's use of force is often susceptible to different interpretations. Catlin v. City of Wheaton, 574 F.3d 361, 367 (7th Cir. 2009). There is a factual dispute between what Plaintiff alleges and what Defendants allege. Based upon the this, a factual inquiry needs to be made into the excessive force claim. Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005) (an excessive force claim "nearly always requires a jury to sift through disputed factual contentions, and draw inferences therefrom...".)

### B. Defendant Ingles Is Not Entitled to Qualified Immunity

Defendants argue that Defendant Ingles is entitled to qualified immunity. Once again, Defendants rely on their version of the disputed material facts in support of this argument. This is not a valid basis for summary judgment or a finding that Defendants are entitled to qualified immunity.

Qualified immunity shields a police officer from a lawsuit "insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). There are few constitutional rights more clearly established than the right to be free from

8

excessive and unreasonable force. See, e.g., Sallenger v. Oakes, 473 F.3d 731, 742 (7th Cir. 2007) (holding that police officers who were alleged to have punched an arrestee were not entitled to qualified immunity).

Moreover, courts have held that when there is a dispute about the amount of force used and the reasonableness of that force, a court cannot decide whether the officers are entitled to qualified immunity as a matter of law. See, e.g., Abdullahi v. City of Madison, 423 F.3d 763 (7th Cir. 2005) (reversing summary judgment on qualified immunity grounds, holding "where very nature of officer's conduct remains undetermined, court cannot resolve qualified immunity defense prior to trial.")

Here, Plaintiff alleges that he was complying with the Defendants when he was tackled and Ingles intentionally raised his arm towards his head until it broke. Obviously, if these facts were proved at trial, that would support a finding that the Ingles conduct was "unreasonable under the circumstance" and violated Plaintiff's clearly established constitutional right to be free from excessive and unreasonable force.

### C.  City of Galesburg is Liable Pursuant to *Respondeat Superior* on Plaintiff's State Law Claims

Defendants assert that the City of Galesburg should be dismissed because there is no Monell claim. That assertion is contrary to long standing precedent which establishes that the City is liable for any tort judgment arising from the willful and wanton acts of its officers. See, e.g., Brown v. King, 328 Ill.App.3d 717, 724, 767 N.E.2d 357, 362, 262 Ill.Dec. 897, 902 (1st Dist. 2002) ("[T]he sheriff is required to pay any tort compensatory damages judgment for which ... an employee acting in the scope of his employment is liable so long as the conduct was willful and wanton."); Cooper v. Office of Sheriff of Will County, 333 F.Supp.2d 728 (N.D.Ill.2004); Blalock v. City of Joliet, 2009 WL 188038 (Hibbler, J.) (N.D.Ill., Jan. 21, 2009). Plaintiff *agrees* that there is no *respondeat* liability on § 1983 claims. Plaintiff therefore has appropriately limited Count IV to *only* the state law claim for battery.

Defendants' argument is based on the false premise that Plaintiff seeks *respondeat* liability on federal claims. However, it is plain on the face of the complaint that Plaintiff's *respondeat* claim references only his state claim for battery. The Defendants' meritless argument must therefore be rejected.

9

**D.     The City of Galesburg is Properly Named as the Indemnifying Defendant**

Defendants next contend that the City of Galesburg should be dismissed from the case because there is no liability on the part of Defendant Ingles. Of course, if summary judgment were entered against Plaintiff, the City of Galesburg would not have any liability. But, barring that, the City of Galesburg is properly named as a defendant in Plaintiff's indemnification count.

The Tort Immunity Act, 745 ILCS 10/9-102 directs local government entities to "pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable." It has been repeatedly held that the municipality that will ultimately be responsible for a judgment entered in the case pursuant to § 9-102 is properly named as a party at the outset of the suit.

In Wilson v. City of Chicago, 120 F. 3d 681 (7th Cir. 1997), the Seventh Circuit held that a Plaintiff can bring a § 9-102 indemnification claim against a municipality before any judgment is obtained against an individual defendant. Id. at 684-85. Thus, an action for indemnification is viable and appropriate at the outset of the litigation. Id. The Wilson Court held that there was no benefit in requiring a plaintiff to initiate separate proceedings against the municipality after obtaining judgment against an officer. Id. at 685. Wilson has been followed routinely in federal and state courts throughout Illinois, and it is now well-settled law that local government units are properly named as indemnitors in § 1983 cases under the Tort Immunity Act. See, e.g., Sassak v. City of Park Ridge, 431 F. Supp.2d 810, 822-23 (N.D. Ill. 2006); Medina v. City of Chicago, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000); Brown v. King, 328 Ill. App. 3d 717, 767 N.E. 2d 357, 362-63 (2001).

## Conclusion

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion for summary judgment.

    Respectfully submitted,

    /s/ Louis J. Meyer
    *Counsel for the Plaintiff*

Louis J. Meyer
Jackowiak Law Offices
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595